```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
DOUGLAS J. LUCKERMAN,               )
                                    )
         Plaintiff,                 )
                                    )
         v.                         )   C.A. No. 13-185 S
                                    )
NARRAGANSETT INDIAN TRIBE,          )
                                    )
         Defendant.                 )
_____)
```

## OPINION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Plaintiff Douglas Luckerman, an attorney who formerly represented Defendant Narragansett Indian Tribe ("Tribe"), brought suit against the Tribe in state court for breach of contract, alleging that the Tribe failed to fully compensate him for his services. The Tribe removed the case to federal court and filed the instant motion to dismiss, arguing, among other things, that the case falls within the jurisdiction of its tribal court. (ECF No. 8.) Luckerman filed an opposition to the Tribe's motion (ECF No. 10), as well as his own motion to remand the matter to state court (ECF No. 11). For the reasons set forth below, both motions are DENIED, and the case shall be stayed pending adjudication in the tribal court.

I.  Facts

Luckerman, a Massachusetts attorney and non-member of the Tribe, began representing the Tribe in 2002.  In March 2003, Luckerman prepared and directed to the Tribe's Chief Sachem Matthew Thomas, a letter memorializing the terms of the engagement ("2003 agreement").  The 2003 agreement provides, in pertinent part:  "The Tribe agrees to waive any defense of sovereign immunity solely for claims or actions arising from this Agreement that are brought in state or federal courts."  (Ex. to Stipulation 8, ECF No. 4-1.)  While the agreement is not signed by any representative of the Tribe, the complaint alleges that the Tribe accepted its terms.  A note at the end of document states:  **"THIS IS YOUR AGREEMENT. . . . IF YOU DO NOT UNDERSTAND IT OR IF IT DOES NOT CONTAIN ALL THE AGREEMENTS WE DISCUSSED, PLEASE NOTIFY ME."**  (Id. at 9.)

In February 2007, Luckerman was again engaged by the Tribe to act as counsel to one of its offices, the Narragansett Indian Tribal Historic Preservation Office ("NITHPO").  Luckerman and NITHPO entered into an agreement setting forth the terms of the engagement ("2007 agreement").  The agreement provides, in pertinent part:  "The NITHPO agrees to a limited waiver of Tribal sovereign immunity in Tribal, federal and state courts, solely for claims arising under this Agreement."  (Id. at 11.)  The 2007 agreement is signed by John Brown, the Narragansett

2

Indian Tribal Historic Preservation Officer. Like the 2003 agreement, it directs the recipient to notify Luckerman if there is any problem with the terms.[1]

The Tribe made some payments to Luckerman, but those payments allegedly were not sufficient to meet the Tribe's obligations under the 2003 and 2007 agreements. Luckerman claims that the Tribe is currently indebted to him in an amount of over $1.1 million.

II. Discussion

"The question whether an Indian tribe retains the power to compel a non-Indian . . . to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law . . . ." Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 27-28 (1st Cir. 2000) (quoting Nat'l Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 852 (1985)). Thus, in the present case, this Court has federal question jurisdiction to determine "(1) the extent of the tribal court's jurisdiction over the plaintiff's claims, and (2) the defendant's assertion that, as an arm of a federally recognized Indian tribe, the impervious shield of tribal

---

[1] Both the 2003 and 2007 agreements were attached to Luckerman's state court complaint. In any event, the Court may consider matters outside the pleadings in ruling on Defendant's Rule 12(b)(1) argument. See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004).

sovereign immunity protected it from suit."[2] Id. at 25. The First Circuit has indicated that the latter issue should be addressed first. See id. at 28.

A. Sovereign Immunity

"Generally speaking, the doctrine of tribal sovereign immunity precludes a suit against an Indian tribe except in instances in which Congress has abrogated that immunity or the tribe has foregone it." Id. at 29. Here, the Tribe argues that the complaint must be dismissed on sovereign immunity grounds pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Luckerman counters that the Tribe waived its immunity in the 2003 and 2007 agreements.

With regard to the 2003 agreement, the Tribe responds that the document was not signed by any of its representatives. However, the complaint alleges that Luckerman sent the agreement to Chief Thomas and that the Tribe accepted the terms of the agreement through its conduct. Indeed, the Tribe does not dispute the fact that it received the letter and continued to accept Luckerman's legal services. While it is true that "a waiver of sovereign immunity cannot be implied," Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978) (internal citation and quotation marks omitted), the Tribe's conduct here cannot

---

[2] The Tribe's other arguments for dismissal must be addressed, in the first instance, by the tribal court if it decides to exercise jurisdiction over this case.

4

fairly be characterized as an implied waiver. By receiving a proposed agreement that unequivocally purported to waive the Tribe's sovereign immunity, and treating that agreement as valid, the Tribe expressly waived its immunity. The cases cited by the Tribe are not to the contrary. See id. at 58-59 (holding that a statute making habeas corpus available to individuals detained by Indian tribes did not constitute a general waiver of sovereign immunity); Bottomly v. Passamaquoddy Tribe, 599 F.2d 1061, 1066 (1st Cir. 1979) ("[T]he Tribe's mere acceptance of benefits conferred upon it by the state cannot be considered a voluntary abandonment of its sovereignty and its attendant immunity from suit."); Federico v. Capital Gaming Int'l, Inc., 888 F. Supp. 354, 356 (D.R.I. 1995) (holding that "a waiver of sovereign immunity cannot be inferred from [an Indian] Nation's engagement in commercial activity" (internal citation and quotation marks omitted) (alteration in original)).

The 2007 agreement, unlike the 2003 agreement, is signed by a representative of NITHPO. The Tribe, however, contends that this organization is "an entity of the Tribe," which lacked the authority to waive the Tribe's sovereign immunity. (Def. Narragansett Indian Tribe's Mem. in Supp. of its Mot. to Dismiss 6, ECF No. 8-1.) However, three federal courts of appeals, including the First Circuit, have reached the opposite conclusion on similar facts. See Ninigret, 207 F.3d at 29-31

(holding that the Narragansett Indian Wetuomuck Housing Authority, which the court characterized as "an arm of the Tribe," acting pursuant to a tribal ordinance, waived sovereign immunity by contract); Confederated Tribes of the Colville Reservation Tribal Court v. White, (In re White), 139 F.3d 1268, 1269, 1271 (9th Cir. 1998) (holding that Colville Tribal Credit, "an agency of the Confederated Tribes of the Colville Reservation," waived sovereign immunity by participating in a Chapter 11 bankruptcy proceeding); Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803, 806, 812 (7th Cir. 1993) (holding that "a wholly-owned tribal corporation and governmental subdivision" waived sovereign immunity in a letter of intent).

Further, the fact that the Tribe, not NITHPO, is named as the sole defendant is immaterial. The Tribe has presented no evidence that NITHPO has any independent legal existence. In fact, to the contrary, the Tribe acknowledges that NITHPO is an office of the Tribe. Indeed, in 2002, the Tribe filed a complaint in this Court, listing as the single plaintiff, "Narragansett Indian Tribe of Rhode Island, by and through the Narragansett Indian Tribe Historic Preservation Office." (Attach. 2 to Pl. Douglas J. Luckerman's Objection to Def. Narragansett Indian Tribe's Mot. to Dismiss 12, ECF No. 10-2.) Because NITHPO lacks an independent legal existence, its sovereign immunity and the Tribe's sovereign immunity are one

and the same. See Ninigret, 207 F.3d at 29 ("[W]e shall not distinguish between the Tribe and the Authority in discussing concepts such as tribal immunity and tribal exhaustion.").

   B.   Tribal Exhaustion

The Tribe's second argument in support of dismissal is predicated upon the tribal exhaustion doctrine. Under this doctrine, "when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." Id. at 31; see also Rincon Mushroom Corp. v. Mazzetti, 490 F. App'x 11, 13 (9th Cir. 2012) (holding that "[t]ribal jurisdiction need only be 'colorable' or 'plausible'" for exhaustion to apply). Unlike sovereign immunity, "[t]he tribal exhaustion doctrine is not jurisdictional in nature, but, rather, is a product of comity and related considerations." Ninigret, 207 F.3d at 31. Therefore, while the Tribe waived its sovereign immunity in the 2003 and 2007 agreements, this holding has no bearing on the question of whether this Court should defer to the tribal court and require exhaustion. In the present case, the parties disagree on the existence of a colorable claim of tribal court jurisdiction.

7

As a preliminary matter, "the determination of the existence and extent of tribal court jurisdiction must be made with reference to federal law, not with reference to forum-selection provisions that may be contained within the four corners of an underlying contract." Id. at 33. For this reason, Luckerman's argument that the Tribe waived the exhaustion requirement in the 2003 and 2007 agreements is meritless.

The Supreme Court has made clear that "the sovereignty that the Indian tribes retain is of a unique and limited character. It centers on the land held by the tribe and on tribal members within the reservation." Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 327 (2008) (internal citation and quotation marks omitted). Moreover, "a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." Id. at 330 (internal citation and quotation marks omitted). Consistent with these limitations, "tribes do not, as a general matter, possess authority over non-Indians who come within their borders." Id. at 328. The Supreme Court has, however, recognized two exceptions to this principle, which allow tribes to:

>     exercise civil jurisdiction over non-Indians on their
>     reservations, even on non-Indian fee lands.[3]  First,
>     [a] tribe may regulate, through taxation, licensing,
>     or other means, the activities of nonmembers who enter
>     consensual relationships with the tribe or its
>     members, through commercial dealing, contracts,
>     leases, or other arrangements.  Second, a tribe may
>     exercise civil authority over the conduct of non-
>     Indians on fee lands within the reservation when that
>     conduct threatens or has some direct effect on the
>     political integrity, the economic security, or the
>     health or welfare of the tribe.

Id. at 329-30 (quoting Montana v. United States, 450 U.S. 544, 565-66 (1981)) (internal quotation marks and citations omitted) (second alteration in original).

Luckerman argues that the first of these so-called "Montana exceptions" does not apply here because his activities pursuant to the contracts were largely conducted off the reservation. However, he concedes that some of these activities occurred on tribal land. Moreover, both the 2003 and 2007 agreements are addressed to tribal officials and were presumably accepted at the Tribe's offices. See F.T.C. v. Payday Fin., LLC, No. CIV 11-3017-RAL, 2013 WL 1309437, at *10 (D.S.D. Mar. 28, 2013) ("The test of the place of a contract is the place where the last act is done by either of the parties which is necessary to complete the contract and give it validity." (internal citation and quotation marks omitted)).  In these circumstances,

---

[3] The Supreme Court has defined "non-Indian fee land" as "land owned in fee simple by non-Indians." Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 328 (2008).

9

"treating the nonmember's physical presence as determinative ignores the realities of our modern world that a [non-member], through the internet or phone, can conduct business on the reservation and can affect the Tribe and tribal members without physically entering the reservation." Id. at *11.

Moreover, the First Circuit has suggested, albeit before the Supreme Court's decision in Plains Commerce Bank, that a tribal court may, in some circumstances, have jurisdiction over activities occurring off the reservation. In assessing tribal jurisdiction over an off-reservation dispute, "an inquiring court must make a particularized examination of the facts and circumstances attendant to the dispute in order to determine whether comity suggests a need for exhaustion of tribal remedies as a precursor to federal court adjudication." Ninigret, 207 F.3d at 32 (requiring exhaustion of a claim arising from an agreement for the construction of a housing development "on land purchased by the Tribe but situated outside the reservation"). First, the court must ask whether the claim "impact[s] directly upon tribal affairs." Id. This initial requirement appears satisfied in the present case. See id. ("Courts regularly have held that a contract dispute between a tribe and an entity doing business with it, concerning the disposition of tribal resources, is a tribal affair for purposes of the exhaustion doctrine."). The next step in the analysis is to "measure the

10

case against the tribal exhaustion doctrine's overarching purposes." Id. These purposes include "supporting tribal self-government," "foster[ing] administrative efficiency," and "provid[ing] other decisionmakers with the benefit of tribal courts' expertise." Id. at 31. Here, the Tribe's act of securing legal representation regarding issues of tribal land and sovereignty constitutes an exercise of the Tribe's governmental functions. Moreover, deferring to the tribal court, which regularly deals with issues of tribal jurisdiction, will foster efficiency and produce a record that will assist other decisionmakers.

In sum, Luckerman reached out to the reservation by entering into a consensual relationship with the Tribe, and, accordingly, the tribal court has at least a colorable claim of jurisdiction over suits arising from that relationship.

In a last ditch effort to avoid the exhaustion requirement, Luckerman points to "a joint memorandum of understanding" executed by the Tribe and the State of Rhode Island in 1978, pursuant to which the Tribe gained control of certain lands. See Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 19 (1st Cir. 2006). In exchange, the Tribe agreed that, except for state hunting and fishing regulations, "all laws of the State of Rhode Island shall be in full force and effect on the settlement lands." Id. Congress subsequently passed the Settlement Act,

11

which stated that "the settlement lands shall be subject to the civil and criminal laws and jurisdiction of the State of Rhode Island." Id. (quoting 25 U.S.C. § 1708(a)). The First Circuit has held that this provision "largely abrogates the Tribe's sovereign immunity," and that, in light of this abrogation, the state could enforce its criminal laws on settlement lands by executing a search warrant against the Tribe. Id. at 26.

The first problem with Luckerman's argument on this point is that Narragansett was a sovereign immunity case, in which the First Circuit had no occasion to discuss the doctrine of tribal exhaustion. Additionally, the Narragansett court expressly distinguished its prior decision in Maynard v. Narragansett Indian Tribe, 984 F.2d 14 (1st Cir. 1993), which involved "civil suits premised on activities occurring outside the settlement lands." Id. at 29. Because the instant case is civil in nature and involves the tribal exhaustion doctrine, a separate and distinct issue from sovereign immunity as explained above, the implications, if any, of Narragansett are far from clear. Accordingly, an assessment of tribal jurisdiction over this case "will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." Nat'l Farmers, 471

12

U.S. at 855-56 (footnote omitted).  This examination "should be conducted in the first instance in the Tribal Court itself." Id. at 856.  The care with which the tribal court conducts its jurisdictional analysis as well as the conclusions reached are, of course, subject to review by this Court.

Where, as here, the doctrine of tribal exhaustion applies, whether to dismiss the complaint or merely stay the proceedings pending exhaustion is a decision left to the discretion of the trial court.  See Ninigret, 207 F.3d at 35.  However, a stay is preferable where dismissal may cause problems under the applicable statute of limitations.  See, e.g., Rincon, 490 F. App'x 13-14.  Here, some of the allegations in the complaint date back to 2002.  Rhode Island has a ten-year statute of limitations for contract actions.  See Martin v. Law Offices Howard Lee Schiff, P.C., C.A. No. 11-484S, 2012 WL 7037743, at *1 (D.R.I. Dec. 10, 2012) (citing R.I. Gen. Laws § 9-1-13(a)), report and recommendation adopted, No. CA 11-484 S, 2013 WL 489655 (D.R.I. Feb. 7, 2013).  Thus, if Luckerman was forced to re-file, more of his claims would become time-barred with each passing day.  For this reason, the Court finds that a stay is appropriate.

III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED, and Plaintiff's motion to remand is DENIED as moot.  The

13

case is stayed pending tribal exhaustion.  Should the tribal court assert jurisdiction and adjudicate the merits of the case, Plaintiff may return to this Court for review of the jurisdictional issues.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  August 29, 2013