UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
DOUGLAS J. LUCKERMAN,               )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )   C.A. No. 13-185 S
                                    )
NARRAGANSETT INDIAN TRIBE,          )
                                    )
        Defendant.                  )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, Chief Judge.

On August 29, 2013, this Court denied Defendant Narragansett Indian Tribe's ("Tribe") motion to dismiss, but stayed adjudication of the case pending tribal exhaustion.[1] Now, the Tribe has filed a motion for reconsideration of that decision (ECF No. 18), re-emphasizing the Tribe's position that its tribal sovereign immunity bars the instant lawsuit, and asking again that the Court dismiss the claims brought by

---

[1] The Tribe made a colorable argument that the dispute should be heard in its Tribal Court. The Court of Appeals for the First Circuit has explained: "The tribal exhaustion doctrine holds that when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 31 (1st Cir. 2000).

Plaintiff Douglas J. Luckerman.  For the reasons set forth below, Defendant's motion for reconsideration is DENIED.

I. Facts

The facts are familiar to the parties.  In 2002, Luckerman, a Massachusetts attorney and non-member of the Tribe, began representing the Tribe in legal matters.  In March 2003, he prepared and sent a letter memorializing the terms of this engagement to the Tribe's Chief Sachem Matthew Thomas.  This March 2003 letter provides that "[t]he Tribe agrees to waive any defense of sovereign immunity solely for claims or actions arising from this Agreement that are brought in state or federal courts."  (Ex. to Stipulation 8, ECF No. 4-1.)  After the letter was sent, the Tribe continued to accept the legal services rendered by Luckerman.[2]

In February 2007, the Tribe once again sought Luckerman's services, and he agreed to act as counsel for one of its offices, the Narragansett Indian Tribal Historic Preservation Office ("NITHPO"). Luckerman and NITHPO entered into an agreement, which provided that "NITHPO agrees to a limited waiver of Tribal sovereign immunity in Tribal, federal and state courts, solely for claims arising under this Agreement." (Ex. to

---

[2] Of additional importance, the 2003 letter provides the following note: "**THIS IS YOUR AGREEMENT. . . .  IF YOU DO NOT UNDERSTAND IT OR IF IT DOES NOT CONTAIN ALL THE AGREEMENTS WE DISCUSSED, PLEASE NOTIFY ME."** (Ex. to Stipulation 9, ECF No. 4-1.)

Stipulation 11, ECF No. 4-1.)  Narragansett Indian Tribal Historic Preservation Officer John Brown signed the 2007 agreement.

For years, these two agreements between the Tribe and Luckerman were non-controversial.  Indeed, the Tribe made some payments to Luckerman for his services pursuant to these very agreements.  These payments, however, were insufficient to compensate Luckerman for all of his work, and he now claims that the Tribe owes him more than $1.1 million.

Luckerman brought suit seeking payment of the fee he claims is owed to him.  The Tribe steadfastly maintains that sovereign immunity bars the lawsuit – and this argument is the basis for the Tribe's motion to reconsider.

II. Discussion

A motion to reconsider "is an extraordinary remedy and should be used sparingly '[u]nless the court has misapprehended some material fact or point of law.'" Lincoln Nat. Life Ins. Co. v. Wilmington Trust Co., C.A. No. 08-74 S, 2013 WL 4042659, at *3 (D.R.I. Aug. 9, 2013) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)).  The extraordinary nature of this remedy is apparent from the fact that the Federal Rules of Civil Procedure do not provide for a motion to reconsider; instead, a court's inherent power gives it the ability to re-examine its interlocutory orders.  Id.  "To obtain relief, the movant must

demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." Palmer, 465 F.3d at 30.

The Tribe's motion to reconsider focuses on its argument that tribal sovereign immunity short-circuits Luckerman's lawsuit. "Generally speaking, the doctrine of tribal sovereign immunity precludes a suit against an Indian tribe except in instances in which Congress has abrogated that immunity or the tribe has foregone it." Ninigret Dev. Corp., 207 F.3d at 29. The Court's August 29 Order (the "Order," ECF No. 16), recognized that the Tribe could not impliedly waive sovereign immunity. (Order at 4-5.) With respect to the 2003 agreement, this Court determined that the Tribe affirmatively waived its sovereign immunity by receiving that agreement and treating it as valid, despite the agreement's unequivocal provision waiving the Tribe's sovereign immunity.[3] (Id.) Meanwhile, the 2007 agreement was signed by a NITHPO officer. The Court rejected the Tribe's argument that NITHPO lacked the authority to waive the Tribe's sovereign immunity finding that NITHPO and the Tribe

---

[3] The Tribe argues that it is unclear from the record whether it received these two letters from Luckerman. (Def. Mot. for Reconsideration 5, ECF No. 18.) Tellingly, however, the Tribe never disputes that it actually received the letter.

4

were not independent legal entities, and thus their sovereign immunity was one and the same. (Id. at 5-6.)

Now, the Tribe seeks to meet its burden of demonstrating that these determinations constituted manifest errors of law by rehashing its previously rejected arguments and pointing to additional case law that it failed to cite in its motion to dismiss. The Tribe's arguments fail. The three cases relied on by the Tribe all share a key characteristic that is missing here – each of the Indian tribes in those cases had constitutional provisions or ordinances that dictated how sovereign immunity was to be waived. Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1287 (11th Cir. 2001)[4]; World Touch Gaming, Inc. v. Massena Mgmt., LLC, 117 F. Supp. 2d 271, 272 (N.D.N.Y. 2000); Danka Funding Co. v. Sky City Casino, 329 N.J. Super. 357, 365-66 (N.J. Super. Ct. Law Div. 1999). Such constitutional provisions and ordinances put those dealing with the tribes on notice of the procedures that must be followed. The Seminole Tribe's ordinance explains that "the Seminole Tribe of Florida desires to make clear to all persons having business or otherwise dealing with the Seminole Tribe of Florida, its

---

[4] The Plaintiff in Sanderlin relied on an argument that the Seminole Tribe implicitly waived its sovereign immunity. Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1286 (11th Cir. 2001). By contrast, Luckerman has successfully advanced an argument that the Narragansett Indian Tribe explicitly waived its sovereign immunity through its actions.

5

subordinate economic and governmental units, its tribal officials, employees and authorized agents that the Seminole Tribe of Florida does not under any circumstances intend to voluntarily waive its entitlement to immunity." Sanderlin, 243 F.3d at 1287.

Here, the Tribe's Constitution and By-Laws are silent on how the Tribe must waive sovereign immunity, and thus Luckerman reasonably relied on the agreement he entered into with the Tribe. The Tribe has provided an affidavit from Chief Thomas which explains that the "Chief Sachem and the Tribal Secretary execute any Tribal Council resolution memorializing a waiver of immunity." (Aff. of Chief Sachem Thomas ¶ 7, ECF No. 20-1.) This affidavit, however, unlike the constitutional provisions and ordinances in the cases upon which the Tribe relies, does not put those dealing with the Tribe on notice of its alleged practices regarding sovereign immunity waivers. Additionally, the Tribe points to one provision of its Constitution and By-Laws which states: "The Narragansett Tribe of Indians shall have a private seal. All legal papers must be signed by the Chief Sachem and Secretary and stamped with the Tribal Seal." (Id. at ¶ 6.) This provision simply does not dictate how the Tribe must waive sovereign immunity.

In sum, nothing has changed in the time between the Tribe's motion to dismiss and its motion for reconsideration to suggest

6

the Court committed a manifest error of law in its August 29 Order.

III. Conclusion

For the foregoing reasons, Defendant's motion for reconsideration is DENIED.  The case remains stayed pending tribal exhaustion.


IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date:  January 7, 2014